## HAIGHT *vs.* BADGELEY and wife.

15  499
67h 302

In trespass *quare clausum fregit*, and enticing away the servant of the plain-
tiff, it *seems* that neither the county court nor this court, can set aside a
judgment rendered by a justice of the peace, on a verdict, on account of
excessive damages, unless they are so excessive as to evince partiality, pre-
judice or passion.

As a general rule, a specific performance of a contract, made by an adult, for
personal services, will not be enforced.

In this state, no absolute property can be acquired in the person or personal
services of an adult, by an executory contract; nor can such a contract be
enforced by any criminal proceeding.

The rule giving an employer a right of action for enticing away his servant,
has not been overruled here, *it seems.*

A license to enter the house of another, should be pleaded, in trespass.

THIS was an appeal from the decision of the Saratoga county
court, reversing a judgment of a justice's court, in favor of the
plaintiff. The complaint was that the wife of the defendant,
B. Badgeley, broke and entered the close of the plaintiff, and en-
ticed Catharine, a servant girl of the plaintiff, to leave his em-
ployment; that said servant had ever since been discontented and
refused to serve the plaintiff, in consequence. The answer
wholly denied the complaint; and also stated, that if either of
the defendants ever entered the plaintiff's premises, the latter
used abusive language to the wife; and the defendant B. Badge-
ley denied that he entered the premises. The cause was tried
by a jury. One Wright testified that the girl Catharine was
taken from the poor house by the plaintiff, and that he, being
keeper, told the plaintiff's wife, she could keep her as long as
she liked. One Southard testified that the defendant, B. Badge-
ley, asked him to take Catharine to the railroad, if he could not
carry her. The daughter of the plaintiff testified, that the de-
fendant Sarah B. came to her father's house, and she asked her
to step into her mother's room, but that she stept into the
kitchen and shut the door in the face of the witness. That after a
time her mother went into the kitchen, and the defendant Mrs.
B. came into the dining room, when Mrs. B. told her mother
that she came after Catharine. The plaintiff's wife told her she
thought she had no claim upon Catharine after sending her to

the poor house. Mrs. B. said she thought she had. She fur‐ ther testified that she had frequently found the defendant, Mrs. B. in the kitchen. That Catharine was hindered about an hour while Mrs. B. was there. The plaintiff told Mrs. B. he did not think it decent for her to come into the house and try to get away his servants. Catharine got her bandbox and said she was going away, for Mrs. B. said she must, and had made her certain promises. That her mother talked with Mrs. B. some‐ time down by the gate. She further testified that after this, the girl was discontented, and it was difficult to get her to do her work. On her cross-examination, she testified, among other things, that when her mother came back from the gate, she said she had agreed she would send the girl to the railroad in a week. That Mrs. B. was there two hours. That she saw B. Badgeley there also. The girl, Catharine, testified that Mrs. B. came into the kitchen and asked her if she had rather live with the plain‐ tiff than her. That she answered, she would rather live with Mrs. B. That she was contented until that time at the plain‐ tiff's, and should have been if Mrs. B. had not come after her. Mrs. B. told her she would not have to work so hard for her, and that she would get grave stones for her child. That she had rather live with Mrs. B. That Mrs. B. told her she had better stay with the plaintiff till his wife got another girl, and that she still remained there. That when Mrs. B. first came in, she told her she had come after her. Both the defendants prom‐ ised to come after her. That she could not be contented at the plaintiff's. Southard also testified that Catharine was a simple minded girl; and it appeared that she had had a child, at the poor house. The defendant moved for a nonsuit, but the mo‐ tion was refused, and the jury found a verdict for $20 damages. That judgment was reversed by the county court, and the plain‐ tiff appealed.

*A. Haight*, for the plaintiff.

*G. G. Scott*, for the defendant.

Haight *v.* Badgeley.

*By the Court,* HAND, P. J.   In this state, a contract for the
personal services of an adult, as a general thing, is a matter for
courts of law : and for a violation of it, the remedy is in dam-
ages ; and a specific performance will not be enforced. (*Ham-
blin* v. *Dinneford,* 2 *Ed. Ch. R.* 529.   *Sanquirico* v. *Benedetti,*
1 *Barb. S. C. R.* 315.   *Corsetti* v. *De Rivafinoli,* 4 *Paige,* 264.
*Kemble* v. *Kean,* 6 *Sim.* 333.   *Clarke's case,* 1 *Blackf.* 122.
*Smith* v. *Gould,* 2 *Ld. Raym.* 1274. 2 *Kent,* 258, *n.*)   No
absolute property can in this state be acquired in the person or
personal services of an adult, by an executory contract.   Nor
have we, and probably we never shall have here, criminal pro-
ceedings to enforce such a contract of hiring, as in England.
(*See* 11 *Q. B. Rep.* 455 ; 9 *Id.* 80, 92 ; 5 *Id.* 926, 933 ; 14 *East,*
605 ; 2 *Toml. L. D.* 378 ; 3 *Id.* 454 ; 15 *Vin.* 317.)   But, unless
there is something in the genius of our institutions that renders
the law of the mother country inapplicable, it is here, as there,
actionable, to entice from the service of another, one who is in
the employment of the latter, under a contract not fully executed.
(*Cowen's Tr.* 361.   3 *Bl.* 142.   *F. N. B.* 167.   *Hart* v. *Al-
dridge, Cowp.* 54.   *Reg.* v. *Daniel,* 1 *Salk.* 380.   *S. C.* 3 *Id.*
191.   2 *Ld. Raym.* 1116. 2 *Sel. N. P.* 291.   *Blake* v. *Lanyon,*
6 *T. R.* 221.   *Reeve's Dom. Rel.* 376.   *Scidmore* v. *Smith,*
13 *John.* 322.   *Dubois* v. *Allen, Anthon,* 94.   *James* v. *LeRoy,*
6 *John.* 276.   2 *Sel. N. P.* 291.   *Boston Glass Man. Co.* v.
*Binney,* 4 *Pick.* 425.   *Nichol* v. *Martin,* 2 *Esp. R.* 732.   *King*
v. *Higgins,* 2 *East,* 5.   *Bird* v. *Randall,* 3 *Burr.* 1345.   *S. C.*
1 *W. Bl. R.* 373, 387.   *Gunter* v. *Astor,* 4 *J. B. Moore,* 12.
*And see Woodward* v. *Washburn,* 3 *Denio,* 369.)   This right
of action may have had its origin in English statutes.   (*F. N. B.*
169.)   However that may be, it is familiar law in England, and
does not seem to have been overruled here.   But I do not put
this decision on that ground, nor give any definite opinion, for
it is not necessary to decide that point in this action, which is
for breaking and entering the close of the plaintiff, and there
enticing his servant to leave his employment.   The *gravamen*
of the complaint is trespass *domum fregit,* and the persuasion
of the servant is matter of aggravation.   This the defendants

deny in general terms, and also, as matter in justification, plead that they went there to see the girl Catharine. And it is contended that there is an implied license in such cases; and here also, license in fact. I find no evidence to sustain an implied license. It was not proved that the parties were even neighbors. On the contrary, it would seem from the testimony, that they were not. It was not proved that they were acquainted before the alleged trespass; or that either of the defendants had ever been there before. Nothing appeared from which we are authorized to presume that familiar intimacy from which perhaps in some cases, a license can be implied. And certainly, the law gave the defendants no right to enter the kitchen of the plaintiff unbidden, to entice away his servants. Nor does the return contain evidence of an express license. It has been held that a servant cannot give such license. *Holdringshaw* v. *Rag, Cro. Eli.* 876.) And, indeed, the same as to the power of the wife. (*Taylor* v. *Fisher, Cro. Eliz.* 246.) But however that be, there is no proof of such license in this case. The defendant, Mrs. B. as I understand the testimony, when first discovered, was in the house; and on being invited into the room where the wife of the plaintiff then was, by his daughter, instead of accepting the invitation, she went into the kitchen, shutting the door in the face of the latter. Even if she stood at or without the door when invited, and if the daughter had authority, she did not enter the house in pursuance of that invitation. Several times after that, she was found in the kitchen with the girl. And according to the statement of the answer, the plaintiff, so far from consenting to all this, used strong and harsh language to the defendant Mrs. B. Besides, no license was pleaded. Even under the old system license must have been pleaded in trespass, and could not be given in evidence under the general issue. (1 *Chitty Bl.* 340, 433. *Bennett* v. *Allcott,* 2 *T. R.* 166. *Cowen's Tr.* 697.)

The damages are said to be excessive, particularly as the servant did not, in fact, leave before suit; but was permitted to continue in the service of plaintiff for a time. I doubt whether the county court can reverse a judgment for that cause alone,

Tracy *v.* Tracy.

in an action of trespass, unless the verdict is so outrageously excessive as to evince partiality, prejudice, or passion. (*Gra. on N. Tr.* 434.) But if it can, we cannot say in this case they are excessive. In *Gunter* v. *Astor*, (4 *J. B. Moore*, 12,) although the workmen were engaged by the piece, the recovery was nearly $8000. The jury, no doubt, were good judges of the matter, and probably thought, as did the great commentator on the laws of England, that this was "an ungentlemanlike," (or unlady like) act, as well as illegal, (3 *Bl.* 142;) one calculated to produce ill blood, and disturb the peace and quiet of families, besides violating the plaintiff's legal rights. And upon the whole, I think the defendants must be satisfied with their verdict.

Judgment of the county court reversed, and that of the justice affirmed, with costs.

[WASHINGTON GENERAL TERM, May 2, 1853. *Hand, Cady* and *C. L. Allen,* Justices.]