FRANK B. REYNOLDS and Another, Appellants, *v.* JAMES F. EVERETT and Others, Respondents.

*Combination to entice away employees — strikes — "picketing" — remedy at law — case for equitable relief by permanent injunction not made out — Penal Code, secs. 170, 171, 675, 720.*

It does not follow, assuming that the provisions of the Penal Code (§§ 170, 171, 675, 720) do not take away the legal remedies that existed prior thereto, and that a right exists to maintain an action for damages by reason of a combination or conspiracy which produces injury to property or business, that an action can be maintained on the equity side of the court.

On the trial of a suit in equity for an injunction to restrain the acts of a combination formed to entice away the employees of a manufacturer, by means of "picketing" his premises and addressing persuasions and inducements to his employees, in connection with a strike for higher wages which was in progress when the suit was commenced, but which had ended some months before it came to trial, in which suit a preliminary injunction had been granted and continued, the court refused a permanent injunction and dismissed the complaint.

*Held,* on appeal, that the exercise of the discretion of the court in refusing a permanent injunction should not be overruled, it not appearing that a case for equitable cognizance was presented by the facts, and it appearing that the occasion for relief by injunction was passed.

*Semble,* that the remedy of an employer for the enticement of employees from his service, against a combination formed for that purpose, is by an action at law for damages, and that a court of equity will not entertain an action, the gist of which is the enticement of servants, in the absence of special circumstances calling for the intervention of a court of equity.

Appeal by the plaintiffs, Frank B. Reynolds, George Tracy Rogers and Frank E. Lay, from a judgment of the Supreme Court, entered in the Broome county clerk's office on the 16th day of March, 1892, upon a decision made at the Broome Special Term, dismissing plaintiff's complaint, without costs, after a trial at said Special Term on the 24th day of June, 1891.

*Edmund O'Connor, Alex. Cumming* and *A. D. Wales,* for the appellants.

*George B. Curtiss, Roberts & O'Brien* and *Tracy Becker,* for the respondents.

HARDIN, P. :

Plaintiffs brought this suit in August, 1890. They were then engaged in the business of manufacturing and selling cigars in the city of Binghamton, and there were other manufacturers engaged in a similar business, and, with the plaintiffs, employed some 3,000 persons to do the mechanical work of making cigars. The plaintiffs. employ about 400 persons, male and female, in the prosecution of their business, and the complaint alleges that, in order to have the business profitably conducted, it must be " run continuously, and the stoppage of the business of manufacturing arbitrarily, without. regard to the interests of the business, inevitably results in a large loss to the business." It is also alleged that on June seventeenth of that year " almost all of the said employees in said manufactories, to the number of several thousand, and among them the employees. in plaintiffs' said manufactory, to the number of two hundred (200), struck, as it is called — that is, discontinued working in said manu-- factories, and refused to work for the plaintiffs, and for the proprietors of said other manufactories, unless they were paid an increased price for their work in accordance with the demand, which the plaintiffs and said proprietors of said manufactories: refused to give, as they could not reasonably afford, under existing business conditions, to grant said increased price demanded; and that since said June 17th, said striking employees have, to a great extent, continued in their refusal to work for plaintiffs and said other proprietors." It is alleged that by reason thereof the operation of plaintiffs' manufactory was practically suspended, and that the plaintiffs " began to engage and employ other and new employees, * * * and that as soon as plaintiffs began to obtain said new employees, and even for sometime before, the defendants, illegally and wrongfully conspiring, conniving and contriving, and confederating together with themselves, and with other persons whose names are unknown to plaintiffs, to prevent the plaintiffs and said other manufacturers from carrying on their said business,

determined to execute said determination by the following
methods and devices, that said defendants, with others whose
names are unknown to plaintiffs, caused large numbers of strik-
ing employees and others to assemble about the entrance to the
plaintiffs' place of business at the time when plaintiffs' new employees
came to and left said place of business in going to and from their
work and to their respective places of abode. That, in pursuance
of said conspiracy and confederation, said crowds interfered with
new employees by intimidating them by their numbers, by making
threatening remarks to them if they did not leave plaintiffs' employ,
by appealing to them to leave plaintiffs' employ, by hiring them,
and trying to hire them, to leave plaintiffs' employ, and by applying
scurrilous and opprobrious epithets to said new employees when
they refused to leave their new employment; and, in pursuance of
said illegal conspiracy, the defendants, with others whose names are
unknown to plaintiffs, caused a disciplined force of said striking
employees and others to guard and watch plaintiffs', and all other of
said manufactories in Binghamton, for the purpose of obtaining the
names and places of abode of said new employees, so that if unsuc-
cessful in seducing plaintiffs' new employees from their employment
on the way to and from their business, they could still carry out
their said illegal purpose at the places of abode of said new employees
and elsewhere whenever and wherever they could get the oppor-
tunity, and also for the purpose of intimidating them as aforesaid."
It is further alleged in the complaint, viz.: "That, in pursuance of
said illegal conspiracy, they enticed away many of the plaintiffs' said
new employees from their employment, and prevented many other
persons from taking said employment,  *  *  *  and that all of
said acts and devices, with many others of a similar purpose, were
part of a said wrongful and unlawful conspiracy, and of a scheme
to prevent the carrying on of the plaintiffs' business, and the busi-
ness of said other manufacturers, by making it so odious and
dangerous, or unpleasant for any one assisting them, that the
plaintiffs, and all others of said manufacturers, should be absolutely
prevented from conducting their said business, except upon terms
dictated by said striking employees. That said defendants  *  *  *
also continually interfere with said new employees at their homes
and boarding places, and by every device described, by persuasion,

enticements and threats, endeavor to entice said new employees away from their employment, and defendants, and said unknown persons, threaten to continue said conduct until they have ruined the plaintiffs and all of said manufacturers, or force them to comply with the demands of said strikers, which plaintiffs and said other manufacturers cannot afford to do." The complaint alleges that, by means of said " wrongful and illegal conspiracy, the business of the plaintiffs, and of all others of said manufacturers, have been for several weeks, and still is, practically suspended, * * * by all of which the business of the plaintiffs is greatly and permanently injured, both for the present and the future. That the continuance of said illegal acts will work an irreparable injury to plaintiffs and all of said manufacturers, which injury is incapable of estimate in a legal action for damages, as the damages resulting from said injury will continue for a series of years." * * * It is also alleged that most of the defendants are irresponsible. It is alleged that this action is brought "for the benefit of the plaintiffs, and all other manufacturers of Binghamton similarly situated, who see fit to come in and contribute to the expense thereof." The prayer of the complaint contains the following language: " Plaintiffs ask judgment that the defendants and their agents, servants, attorneys, counselors, and all persons acting with them, be perpetually enjoined and restrained from doing any of said illegal acts, and for a temporary injunction, pending this action, restraining said acts, and each of them, and for such other judgment and relief as may be just." Several answers were interposed by the defendants denying most of the allegations of the complaint and alleging that the plaintiffs and other manufacturers before the 1st of June, 1890, "illegally and wrongfully conspiring, conniving and confederating together, with themselves and with divers other persons whose names are to these defendants unknown, to oppress and injure these defendants and others like them engaged in employment as cigarmakers, and to depreciate the market-value of their labor, and to prevent them from lawfully organizing and from assembling in a peaceable and orderly manner, and from co-operating with other persons employed in the calling, trade or handicraft of cigar making for the purpose of bettering their condition or of obtaining an advance in the rate

of wages or compensation, or maintaining such rates theretofore established as the market-value thereof, and also from demanding an increase of wages, and from assembling, co-operating and using all lawful means to induce employers to pay such wages to all persons employed by such employers, * * * · determined and agreed to carry out and render effectual said illegal and wrongful conspiracy federation by means of" the acts and methods more particularly named; that they would not pay the employees "any· more wages or any greater rate of wages for the same kind and class of work done than the rate and amount so definitely and arbitrarily fixed and agreed upon as aforesaid, and that the plaintiffs and their said co-conspirators and confederates would not employ the defendants or any other cigarmakers, except at and for a rate of wages arbitrarily and definitely fixed and agreed upon by the plaintiffs and their said co-conspiritors and confederates." And further allegations were made in the answers alleging confederation and conspiracy of the plaintiffs and other manufacturers. The answer also alleged " that the plaintiffs have an adequate remedy at law to recover damages for any of the matters and things alleged against the defendants or any of them in the complaint in this action to recover which said damages the identical plaintiffs, before the commencement of this action, had begun an action at law in this court against these identical defendants, which action is still pending." In the prayer in the answer the defendants ask " that said plaintiffs, and each and every of their co-conspirators and confederates, and each of their attorneys, agents and servants, be forever enjoined and restrained from anyway continuing or carrying out or doing any of the unlawful and wrongful acts and things in furtherance and pursuance of their combination, confederation and conspiracy set forth in the fourth count of this answer."

Upon the pleadings and affidavits tending to support the allegations thereof a preliminary injunction was granted. An application was made to dissolve the injunction, and, upon hearing the parties, the judge who granted the same refused to dissolve the injunction, but modified the injunction by an order made on the 9th of September, 1890. The issues between the parties were brought to trial on the 24th of June, 1891, at Special Term, and several matters of fact were found by the Special Term, and among them that the

employees " came together and organized and they appointed a committee of thirty which was called the strike committee." And the Special Term also found "that this strike committee had charge of the general management of the strike, and that under its direction each factory was picketed; that is, men and women were deputed to watch each factory as the employees came to and went from their work, and the said employees were accosted by these pickets and by the defendants and were urged and entreated to leave the plaintiffs' employment in order that the plaintiffs might not be able to continue their business and thereby the purposes of the strike rendered effectual." It was also found "that by such persuasion and entreaty and inducements many of the plaintiffs' employees were induced to leave the plaintiffs' employment, including some who had remained originally without entering upon the strike and some of the new employees who were working for the plaintiffs under contract for a fixed period of time, and by concession plaintiffs' business was sufficiently damaged to authorize an injunction." It was also found "that the defendants who were not among the striking employees were connected with the publication of the Binghamton Leader, a newspaper published daily in the city of Binghamton." It was also found that "both in the local columns and in the editorial columns, in the said paper, appeared matter which was, in approval and encouragement, both of the purpose of the strike and the methods used, of both of which the said defendants had knowledge." It was also found "that the purpose of the strike was to obtain an advance in wages; that such purpose was sought to be accomplished by persuading and inducing as before found, those working for the plaintiffs to leave their employment and those engaged by the plaintiffs to work, from entering into said employment, with the intention of making such combination or strike so extensive as to include all laborers who were working or might work for the plaintiffs' factory and thereby force the plaintiffs, in order to carry on their business, to pay the advanced wages demanded;" also, "by concession that the aforesaid acts, if illegal, authorize an injunction herein." The Special Term directed a judgment for the defendants, which was entered in accordance with the findings dismissing the plaintiffs' complaint. Several special requests to find were made, and in response to the requests,

among other things, the Special Term found " that said persuasions and inducements were used and made in pursuance of a general plan between the strikers and that they would accomplish their purpose by reason of such persuasions and inducements." Also, "that by reason of said persuasions and inducements certain of the employees of the plaintiffs' factory were induced to strike and leave the plaintiffs' employment and certain other persons were induced not to enter the employment of the plaintiffs." It was also found that "some of the employees who did not originally strike, but who were in the employ of the plaintiffs at the time of the strike, were induced by the inducements and persuasions hereinbefore set out to leave the employ of the plaintiffs, and also some of the employees who were thereafter employed to take the places of the men who went upon said strike were induced by the same persuasions and inducements to leave the plaintiffs, and also some persons were induced by said persuasions and inducements not to enter the employ of the plaintiffs." It refused to find that the defendants "were acting in concert and combination with said strike committee in pursuance of a common design to prevent the plaintiffs and said other manufacturers from carrying on their said business by enticing away all of their employees and preventing them from getting other employees until they acceded to the demands of said strikers for an increase of wages," except as it had found upon that subject in the formal findings. In response to one of the requests the Special Term found as follows: "That it was conceded upon the trial, and such was the fact, that by the acts of defendants and those acting with them, as hereinbefore stated, the plaintiffs' business was damaged to some considerable extent and sufficient to give a court of equity jurisdiction to grant an injunction, provided said acts were illegal."

The Special Term refused to find "that the acts of defendants in combining to prevent the plaintiffs from carrying on their business as described in the findings of fact were illegal." It also refused to find that "plaintiffs are entitled to an injunction restraining defendants from combining and acting in pursuance of said combination to entice away plaintiffs' employees." It also refused to find "that plaintiffs are entitled to an injunction restraining defendants from combining and acting in pursuance of said combination to pre-

vent the plaintiffs from obtaining employees to carry on their business " It also refused to find " that the plaintiffs are entitled to an injunction restraining defendants from picketing plaintiffs' factory."

There seems to have been no request made to find damages, or to award damages, to the plaintiffs in any specified amount. The effect of the decision for the defendants, and the judgment entered thereon, are to dissolve the injunction that was granted temporarily, although no formal language to that effect is found in the decision or the judgment. (*Gardner* v. *Gardner*, 87 N. Y., 14; *Jackson* v. *Bunnell*, 113 id., 220.) It may be said that reading the complaint in the light of the facts and the findings made, that the gravamen of the allegations therein is to set out, first, a conspiracy on the part of the defendants; and, secondly, an enticement of the servants or employees from the plaintiffs. In *Place* v. *Minster* (65 N. Y., 95) it was said : " The essence of a conspiracy, so far as it justifies a civil action for damages, is a concert or combination to defraud or to cause other injury to person or property, which actually results in damage to the person or property of the person injured or defrauded." When DWIGHT, J., used the language just quoted, he was dealing with an action at law brought for an alleged conspiracy to defraud the plaintiffs.

Actions brought for the purpose of recovering damages for enticing away from the services of the master a servant are treated as actions for a wrong. In Cowen's Treatise (p. 194) it is said : " Whenever a servant is enticed away from his master's service, the master is entitled to this action for the loss which he sustains. If a servant be taken away from his service, he may also bring an action of trespass, alleging his special damages." And it is added, in treating the subject, that " the real gist of the action is the wrong." In 1745 Lord Chief Justice WILLES, in delivering the opinion in *Winsmore* v. *Greenbank* (Willes Rep., 577), in an action for enticement, treated it as " a special action on the case."

Sir WILLIAM BLACKSTONE, in treating of private wrongs in book 3, page 142, says : " For every master has, by his contract, purchased, for a valuable consideration, the service of his domestics for a limited time ; the inveigling or hiring his servants, which induces a breach of this contract, is, therefore, an injury to the master ; and for that injury the law has given him a remedy by a special action

on the case." (See vol. 2 [Sharwood ed.], § 4.) In *Caughey* v. *Smith* (47 N. Y., 244) it was held that to maintain an action for enticement from service, that it must have been "that the moving cause of the desertion was the inducement held out by the defendant;" and in delivering the opinion in that case, FOLGER, J., says, at page 256, viz.: "And it is to be borne in mind that it is an action of tort."

Appellants contend that "the enticing away of an employee, even where there is no combination or conspiracy, is illegal and actionable," and call our attention to *Caughey* v. *Smith* (47 N. Y., 244); *Stuart* v. *Simpson* (1 Wend., 376); *Woodward* v. *Washburn* (3 Denio, 369), and *Haight* v. *Badgeley* (15 Barb., 499). *Stuart* v. *Simpson* (*supra*), was an action on the case at law for enticement and harboring apprentices.

*Woodward* v. *Washburn* (*supra*) was an action on the case for the loss of services of a hired man, and JEWETT, J., said, in delivering the opinion: "It is a principle of the common law, that where a person sustains a loss or damage, by the wrong of another, he may have an action upon the case to be remunerated in damages;" and he refers to *Hart* v. *Aldridge* (Cowper, 54), as "an action of trespass on the case for enticing away several of the plaintiff's servants who used to work for him in the capacity of journeymen shoemakers," in which case it was found by the jury that two of the persons enticed "were employed as journeymen shoemakers by the plaintiff, but for no determinate time, but only by the piece; and had, at the time of the trespass, laid, each of them, a pair of shoes unfinished; that the defendant persuaded them to enter into his service, and to leave these shoes unfinished, which they accordingly did;" and it was finally held in that case that an action at law would lie."

*Haight* v. *Badgeley* (*supra*) was an action for trespass "*quare clausum fregit*," for enticing away a servant of the plaintiff, and it was held in that case, viz.: "In this State, no absolute property can be acquired in the person or personal services of an adult, by an executory contract; nor can such a contract be enforced by any criminal proceeding. The rule giving an employer a right of action for enticing away his servant, has not been overruled here, it seems;" and in the course of the opinion delivered by HAND, P. J., he

observed : " In this State a contract for the personal services of an adult, as a general thing, is a matter for courts of law ; and for a violation of it, the remedy is in damages, and a specific performance will not be enforced." (Citing *Hamblin* v. *Dinneford*, 2 Edw. Ch. R., 529 ; *Sanquirico* v. *Benedetti*, 1 Barb., 315 ; *Corsetti* v. *De Rivafinoli*, 4 Paige, 264.) And then he adds : " No absolute property can, in this State, be acquired in the person or personal services of an adult by an executory contract ; " and in speaking of the character of the action, he observed : " The gravaman of the complaint is trespass *domum fregit*, and the persuasion of the servant is matter of aggravation." To support the contention of the appellants, numerous other cases are cited which were actions at law. In *Johnston Harvester Company* v. *Meinhardt* (9 Abb's. N. C., 401 ; S. C., 60 How., 168), MACOMBER, J., in delivering an opinion adverse to granting an injunction " against a confederation of persons whose object is to entice away workmen from their employer's employ," and in stating that the remedy is an action for damages, refers to several of the cases already mentioned, and many others, and then states that he is disinclined to extend " the doctrine of recovery for enticing away servants, where, both in fact and theory, the person enticed is a free agent to come and go as he will, responsible only, like other persons, for the violation of his contract or his duty." That case was affirmed by this court (24 Hun, 489), and it was then held " that the acts not controverted, to restrain which an injunction was asked for, did not constitute an invasion of any clear right of property vested in the plaintiff ; that it does not appear that such acts, whether done or threatened to be done, resulted, or would have resulted, in irreparable injury to the plaintiff ; and that the discretion of the Special Term in refusing to continue the injunction was properly exercised."

While the facts appearing in the evidence and in the pleadings and findings in this case differ somewhat from those found in *Johnston Harvester Company* v. *Meinhardt* (*supra*), yet so far as this case rests upon the right of maintaining an action in equity, it is quite similar to that case and it seems to furnish an authority for refusing to support the contention of the appellants, that an injunction, permanent in its character, should have been granted by the Special Term at the time this cause was tried, by reason of the mat-

ters relating to the enticement of the servants of the plaintiffs. The strike commenced in June and was over on the 5th of October, 1890, and this action was brought to trial on the 24th day of June, 1891. But it is contended by the appellants that there was a conspiracy or a combination on the part of the defendants to work an injury to the plaintiffs by " enticing away plaintiffs' employees." In considering this question attention must be given to some modern statutory provisions relating to conspiracy. In section 170 of the Penal Code, it is provided as follows : "And the orderly and peaceable assembling or co-operation of persons employed in any calling, trade or handicraft for the purpose of obtaining an advance in the rate of wages or compensation, or of maintaining such rate is not a conspiracy." And section 171 of the Penal Code declares it to be a misdemeanor to " coerce or compel any person or persons, employee or employees, laborer or mechanic to enter into an agreement, either written or verbal, from such person, persons, employee, laborer or mechanic, not to join or become a member of any labor organization as a condition of such person or persons securing employment, or continuing in the employment of any such person or persons, employer or employers, corporation or corporations." In section 675 of the Penal Code it is provided, viz. : "A person who willfully and wrongfully commits any act which seriously injures the person or property of another, or which seriously disturbs or endangers the public peace or health, or which openly outrages public decency, for which no other punishment is expressly prescribed by this Code, is guilty of a misdemeanor, but nothing in this Code contained shall be so construed as to prevent any person from demanding an increase of wages, or from assembling and using all lawful means to induce employers to pay such wages to all persons employed by them as shall be a just and fair compensation for services rendered." The language which we have given is taken from the section as amended in 1891. It may be observed the section authorizes persons to demand an increase of wages, or provides that it shall not be unlawful to do so, and also provides it shall not be a violation of law to assemble and use all lawful means to induce employers to pay such wages to all persons employed by them as shall be a just and fair compensation for services rendered ; and the standard is laid down in the section to determine what shall be " a just and fair

compensation for services rendered" or to be rendered. And in section 720 of the Penal Code it is provided as follows: "The provisions of this Code are not to be deemed to affect any civil rights or remedies existing at the time when this Code takes effect by virtue of the common law or of any provision of statute." It is contended by the appellants that these provisions of law do not take away the legal remedies that existed prior thereto, and that, therefore, they have a right to maintain an action for damages suffered by reason of any conspiracy or combination which produces injury to their property or their business interests. It is not needful to determine in this case precisely what is the scope and character of the rights of the plaintiffs to maintain an action at law for damages suffered by injuries resulting from a combination to their property or their business being carried on during the period of the existence of the strike. When this action was tried apparently the combination was over and the threats to do injuries were over and the plaintiffs or their business were not in any manner in danger of suffering by reason of any combination then existing. If it be granted, that by reason of such combination or conspiracy, as is claimed to have existed in this case, that the plaintiffs had a right of action to recover damages at law, it does not follow that they were entitled at the time of the trial of this action to have a permanent injuntion awarded by the Special Term, nor does it follow that they were entitled to maintain this action on the equity side of the court to recover such damages as they had sustained. It is a familiar principle that a court of equity will not take jurisdiction where an adequate remedy at law exists, if such defense be insisted upon in the answer as was insisted upon in the answer served in this case. (*Truscott* v. *King*, 2 Seld., 164; *Savage* v. *Allen*, 54 N. Y., 458.)

In *People* v. *Barondess* (61 Hun, 575) a majority of the court seems to have been of the opinion, in considering the penal sections to which we have referred and others, that the word "property" occurring in such legislative provisions "would not include a man's business." We do not deem it necessary to express an assent to that doctrine for the purpose of determining the case now in hand. It. does not follow that if the combination and conspiracy in question were illegal or contrary to the provisions of the statute upon that

subject, that an action in equity can be maintained, or that a court of equity has jurisdiction to give the relief sought in this case  In considering the term "jurisdiction" in *Bangs* v. *Duckinfield* (18 N. Y., 595), JOHNSON, Ch. J., said that jurisdiction "related not to the naked question of power, but rather to the fact that such power had or had not been usually exercised.  Thus the question presented to a court of equity by the objection that the complaining party had a full, adequate and complete remedy at the common law related to the jurisdiction of the court of equity, and is constantly spoken of in the cases in that way."  Similar comments are made in *Anderson* v. *Carr* (65 Hun, 181).

In *McHenry* v. *Jewett* (90 N. Y., 58) it was said that "it is not sufficient to authorize the remedy by injunction; that a violation of a naked, legal right of property is threatened, there must be some special ground of jurisdiction, and, where an injunction is the final relief sought, facts which entitle the plaintiff to this remedy must be averred in the complaint."

In *Gilbert* v. *Mickle* (4 Sandf. Ch. [357]'), Chancellor SANFORD, in considering the cases in which equity would interfere, was called upon to determine whether an injunction should issue to restrain the placing of "a placard" paraded or posted in a public street, before the door of an auctioneer, cautioning strangers to beware of mock auctions, and he finally reached the conclusion "that the Court of Chancery will not interpose to restrain such placard by injunction, but will leave the party to his remedy at law."  And it was further held in that case that "equity always interferes with reluctance for the protection of rights of property by injunction, when those rights are mingled with the administration of criminal jurisprudence."

Our attention is called to *Sherry* v. *Perkins* (17 N. E. Rep., 307), in which case it appears there was a scheme by threats and intimidation to prevent persons in plaintiff's employ from continuing in such employ, and, in pursuance of the scheme, the defendants "caused a threatening banner to be carried in front of plaintiff's shop, the effect of which was to deter persons from continuing to work for or engaging with plaintiff, and the latter's business was thereby injured;" and in delivering the opinion in that case the court stated that the "banners were used more than three months before

the filing of the plaintiff's bill, and continued to be used at the time of the hearing," and the court observed that the "maintaining it was a continuous, unlawful act, injurious to the plaintiff's business and property, and was a nuisance, such as the court of equity will grant relief against." The findings in the case before us do not bring it within the exceptional circumstances of the case cited.

In the case of *New York, Lake Erie and Western Railroad Company* v. *Wenger* (cited in a note, 24 Abb. N. C., 267) it appeared that there was a combination "to go upon the premises of a railroad company to obstruct its business, and to prevent, by force or threats, its employees from performing their duties," and it seems to have been held an unlawful assembling. The case differs from the one before us. It may be said that *Walter* v. *Cronin* (107 Mass., 555) supports the plaintiffs' right to recover in an action at law for damages caused by the enticement, but it does not support the right to maintain an action in equity based upon facts such as are stated in the findings in the case before us.

Appellants call our attention to *Dunsbach* v. *Hollister* (49 Hun, 352), which is a case where a dealer in molding sand had deposited upon his own lot, adjoining that of the plaintiff, a large quantity of sand, placing no covering over it, and so left that the wind would blow it over onto the house and premises of the plaintiff to his annoyance and discomfort. In that case it was held that the injury was of such a character as to be the source of recurring personal annoyance, discomfort and inconvenience in addition to the damage to property, and that, therefore, a case was presented that would not be adequately compensated in damages, and that an injunction should issue. The case is quite distinguishable from the one before us.

In *Hutchins* v. *Smith* (63 Barb., 252), which was a case to restrain gas and dust issuing from lime-kilns, it was found that the annoyance and injury were continuous, and to such an extent as to amount to a nuisance, and, therefore, a perpetual injunction to restrain the continuance of the nuisance was allowed. That case differs from the one before us.

In *New York Central and Hudson River Railroad Company* v. *City of Rochester* (127 N. Y., 594) it was held that a municipal corporation might be restrained from discharging sewage directly upon private lands, and a court of equity would take jurisdiction

and grant an injunction to restrain the continuance of such injuries which might ensue from such wrongful acts. That case contains nothing supporting the right. of the plaintiffs to maintain an action in equity upon the facts found by the Special Term in the case before us.

Appellants call our attention to *Adams* v. *Rivers* (11 Barb., 390), which was an action of trespass at law, and it was held "a person is a trespasser, who, instead of passing along on the sidewalk of a street, stops on it, in front of a man's house, and remains there, using towards him abusive and insulting language." The case tends to support the right to recover at law for some of the acts specified in the findings before us, but contains nothing supporting the right to recover in an action in equity.

The case of the *Tribune Association* v. *The Sun* (7 Hun, 175) was one where the defendant was about to take possession of the plaintiff's lot and to use the same in making repairs to its own property, and it was stated to be a case "where irreparable injury may and probably will result from the threatened wrong," (opinion of DANIELS, J., page 179), and, therefore, an injunction was allowed. And in *Fox* v *Fitzsimons* (29 Hun, 574), the defendant was excavating the plaintiff's lot and erecting a building thereon whereby the foundations of the plaintiff's house were damaged and the free access of light and air to his windows impeded and destroyed; an injunction was allowed as an exceptional case was presented. The general rule is that an injunction will not issue to restrain a trespass. (*Murray* v. *Knapp*, 62 Barb., 566; *Howe* v. *The Rochester Iron Manufacturing Co.*, 66 id., 592; *Murray* v. *Knapp*, 42 How., 462; *N. Y. and A. R. R. Co.* v. *N. Y., West Shore, etc., R. R. Co.*, 11 Abb. N. C., 386.) Nor to prevent an apprehended trespass. (*Hurlburt* v. *Banks*, 1 Abb. N. C., 166.) Nor where irreparable damage is not alleged and proved. (*Brennan* v. *N. Y. C. and H. R. R. R. Co.*, 30 N. Y. St. Rep., 378; *Mapes* v. *Charles*, 8 N. Y. Supp., 665.)

The rule is also stated in *Campbell* v. *Seaman* (63 N. Y., 569), where an exception to the rule was found to exist, and, in the course of the opinion in that case, it was said that whether an injunction should issue or not "rests in the sound discretion of the court" to which the facts of a particular case are presented.

In *Young* v. *Campbell* (75 N. Y., 525) it appeared that a temporary injunction had been obtained, which was dissolved at Special Term and the order dissolving the same was affirmed and taken to the Court of Appeals for review and that court distinctly held, viz. : "The fact that the object of an action may be defeated by refusing a temporary injunction is not of itself sufficient to deprive the court of all discretionary power in the matter."

In *Mayor, etc., of Hudson* v. *Thorne* (7 Paige, 261), Chancellor WALRATH said : "It is no part of the business of this court (Court of Chancery), to enforce the penal laws of the State or the by-laws of a corporation, by injunction, unless the act sought to be restrained is a nuisance. And it is nowhere alleged in this bill that the manufacture of pressed hay within the compact parts of the city of Hudson, in a building more than thirty feet square, is, in itself, a public nuisance." In the complaint before us no allegation is found that the acts of the defendants are a public nuisance.

In *Brandreth* v. *Lance* (8 Paige, 24) it was held : "The Court of Chancery has not jurisdiction to restrain the publication of a libel, by injunction, upon a bill filed by the party whose character or business will be injured by the publication."

In *Crooke* v. *The Brooklyn, Flushing and Coney Island Railway Company* (8 Week. Dig., 252), in the General Term of the second department, where the plaintiff sought to restrain the defendants from crossing a proposed bridge, it was said : "The remedy of an injunction is not an appropriate one to enforce the payment of compensation for an injury."

In the course of the opinion delivered by DANFORTH, J., in *Troy and Boston Railroad Company* v. *Boston, Hoosac Tunnel and Western Railway Company* (86 N. Y., 127), reviewing many antecedent cases he says : "And although the form of actions and suits, and the distinction between actions at law and suits in equity has been abolished, a party to entitle himself to the equitable remedy by injunction must still make such a case as would, while the distinction existed, have made an equitable cause of action. This is well settled," and he cites numerous authorities in support of the proposition. (See, also, *Mapes* v. *Charles*, 8 N. Y. Supp., 665.)

While section 603 of the Code of Civil Procedure provides for cases in which an injunction order may be granted, it also provides,

viz. : " The case provided for in this section is described in this act as a case where the right to an injunction depends upon the nature of the action." And section 604 provides for its being made to appear by affidavit to obtain an injunction that the defendant is suffering to be done, or threatens or is about to do or suffer to be done " An act, in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, an injunction order may be granted to restrain him therefrom." With this language before us it may be inquired, what is the subject of the action mentioned in the findings in this case which brings it within the section ? As before observed the strike began on the 17th day of June, 1890, and continued until the 5th day of October, 1890, when all of the acts mentioned in the complaint and in the findings apparently ceased, and the trial of this action at the Special Term was on the 24th of June, 1891, and the changed situation and relations of the parties was made apparent by the evidence. From the foregoing views and authorities and the principles deduced therefrom there may well be hesitation and doubt about the propriety of this court overruling the discretion used by the Special Term in refusing to grant a permanent injunction in the case made before that court. To do so would require us to take a step in advance of any well considered case found in this State on the subject of equity jurisdiction and the use of an injunction by such a court, and, in effect, require us to disregard the principle adopted by this court when it decided *Johnston Harvester Company* v. *Meinhardt* (*supra*).

The result is, therefore, reached that the conclusion of the Special Term should be allowed to remain.

MARTIN, J., concurred.

MERWIN, J. :

I concur in affirmance on the ground that at the time of the trial the occasion for asking relief by injunction had passed and no claim was made for recovery of damages.

Judgment affirmed, with costs.