THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS C. O'SULLIVAN, Respondent, *v.* THE NEW YORK LAW SCHOOL and GEORGE CHASE, as Dean of The New York Law School, Appellants.

*Law school — refusal by the faculty to recommend a student for a degree — their discretion not interfered with by the courts.*

The faculty of a law school, having the right to recommend to the Regents of the University of the State of New York students deemed to be worthy of a degree, is vested with a broad discretion as to the persons who shall be so recommended, and when the conduct of a student has been such, intermediate his final examination and the time of conferring degrees, that there is a fair occasion for the exercise of discretion on the part of the faculty, the exercise of such discretion should not be reversed by the courts, and the case must be an extraordinary one to justify judicial interference.

Notwithstanding the right of a law school, in the proper exercise of its discretion, to refuse to recommend, as worthy of a degree, a student who has attended the school and passed a satisfactory final examination, the student is entitled, under such circumstances, to a certificate of attendance and of having passed a satisfactory examination.

APPEAL by the defendants, the New York Law School and George Chase, as Dean of the New York Law School, from an order of the Supreme Court, made at the New York Special Term at Chambers, and entered in the office of the clerk of the city and county of New York on the 1st day of September, 1892, directing the issuance of a peremptory writ of mandamus.

On the 11th of June, 1891, the New York Law School was incorporated by the University of the State of New York, by charter No. 658, which contained the following provision: "This charter shall have no power to grant degrees, but the Regents will con-

fer the degree of Bachelor of Laws on the graduates who have been certified by the New York Law School as having completed its full course, and as being duly qualified in all other respects, and who have passed all examinations and met all other requirements prescribed by law or by the university ordinances."

By chapter 378 of the Laws of 1892, individuals, associations and corporations not authorized by some statute of the State, or by the Regents, are prohibited from conferring degrees. By the rules and practice of the Regents, the degree of Bachelor of Laws is conferred only on candidates who meet the following requirements: (1) Those who have passed the required law student examination as to preliminary general education at a standing of not less than seventy-five per cent; (2) Those who have passed the Regents' examinations in law at a standing of not less than seventy-five per cent; (3) Those who have been certified in writing by the Dean, or an officer legally authorized to grant such certificate on behalf of the school, as having completed to the satisfaction of the faculty the full course of the said law school; (4) Those who have a similar certificate from the law school that the candidate is duly qualified in all other respects to receive said degree.

Whether the candidate possesses the first and second requirements is decided by the Regents through their own examination, but whether he possesses the third and fourth is determined by the faculty of the law school, the Regents accepting their certificate as final. In 1892 the Board of Regents appointed a person to examine the graduating class of the law school, and in May of that year the relator was examined by him and was found to have a sufficient general education and knowledge of the law to entitle him to the degree, which was reported by the examiner to the Regents and to the Dean of the law school. It is the practice of the Regents to make out diplomas for all students who have passed their examinations and forward them before the day fixed for graduation to the Dean of the school, who by countersigning them, certifies that the candidates possess the third and fourth qualifications. On the day appointed for the graduation of the candidates, one of the Regents confers the degrees and delivers the diplomas. On the day fixed for the graduation of the senior class of 1891 and 1892, the degree of Bachelor of Laws was not confered upon the relator, nor was a

diploma delivered to him, because the Dean of the school refused to certify that he was qualified in all other respects to secure the degree.

*Albert B. Boardman*, for the defendants, appellants.

*Franklin Bartlett*, for the relator, respondent.

FOLLETT, J.:

A peremptory writ of mandamus can only be granted in the first instance, in case the applicant's right thereto depends only upon questions of law. (Code Civ. Pro. § 2070.) Upon a motion for a peremptory mandamus, if opposing affidavits are read which conflict with the moving affidavits, the right to the writ must be determined upon the assumption that the averments of the opposing affidavits are true. If the relator desires to controvert or avoid the statements made in the opposing affidavits he should take an alternative writ so that the questions of fact can be tried. (*People ex rel. P. C. Savings Bank* v. *Cromwell*, 102 N. Y. 477; *People ex rel. Martin* v. *Brown*, 55 id. 180.) Under this rule the statements of the answering affidavits, in so far as they conflict with those served in behalf of the relator, must be regarded as true. Preceding the commencement exercises of June, 1892, a committee was appointed, upon the suggestion of the Dean of the school, by the members of the graduating class to make arrangements for the commencement, secure a hall and engage a speaker. A question arose in the committee as to whether religious exercises should be had at the commencement. The committee, by a majority vote, after much contention, decided to invite a clergyman of one denomination to offer the opening prayer and a clergyman of another sect to pronounce the benediction. On the second of June the Dean stated to the committee that their action was unwise, and that it would make an unfortunate precedent where so many religious faiths were represented, would tend to breed discussion in the future, and that he would advise, in view of the situation, that they have no religious exercises, which suggestion was adopted by a vote of the committee. On the morning of June third, the Dean was advised by a telegram that the degrees would be conferred by Bishop Doane, one of the Regents. Because a church dignitary

was to confer the degrees the faculty of the school determined that he should be asked to conduct appropriate religious exercises, which determination was immediately communicated to the class committee. On the same day the relator and eight or ten others remonstrated against the action of the faculty, and Mr. O'Sullivan charged the Dean with underhanded conduct, and the students then present threatened not to attend the commencement exercises unless the action of the faculty was reversed. On the morning of June fourth, Mr. O'Sullivan had an interview with the Dean which is described by him in his answering affidavits, but need not here be repeated, for it is sufficient to say that it discloses conduct on the part of the relator justifying the refusal of the faculty to recommend him as a student upon whom a degree should be conferred.

The relator, by taking a peremptory writ, has admitted the truth of the answering allegations, and the sole question is, whether the conduct described, justified the Dean in refusing his certificate to the relator. Assuming that the relator's conduct is correctly stated by the Dean, as we must, it was, to say the least, contumacious, and calculated to breed discord and trouble in the school. That there should be some power vested in the faculties of schools and colleges to repress and punish such conduct, will be conceded by all. It cannot be that a student, having passed all examinations necessary for a degree, can, before his graduation, excite disturbance, and threaten injury to the school or college, without being amenable to some punishment. No course would seem open except to forthwith expel him or refuse his degree. In this case the latter course was taken.

The faculties of educational institutions having power to confer degrees, and the teachers of schools having the right to recommend to the Regents of the University students deemed to be worthy of degrees, are necessarily vested with a broad discretion as to the persons who shall receive those honors, or be recommended for such distinctions; and when the conduct of a student has been such, between his final examination and the time of conferring degrees, that there is a fair occasion for the exercise of discretion on the part of the faculty, as there clearly was in this case, it should not be reversed by this court, and the case must be an extraordinary one to

justify judicial interference. Any other rule would be subversive of all discipline in the schools and of the educational interests of the State.

To hold that dissatisfied students in the colleges and schools of this State can review the discretion of faculties in cases when the facts justify the exercise of discretion, would be most unwise. We see no reason why the right to discipline a student is not as great between the final examination and the graduation as before, and if we can control the action of the faculty in this case, why may we not be called upon to supervise it in the case of expulsion or suspension of students during their college course?

Notwithstanding the right of the school to refuse to recommend the relator as worthy of a degree, he is entitled to a certificate of attendance, and that he passed a satisfactory examination.

The order of the Special Term is reversed, and the peremptory writ of mandamus is dismissed, with twenty dollars costs and disbursements against the relator.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Order of Special Term reversed, and the peremptory writ of mandamus dismissed, with twenty dollars costs and disbursements against the relator.