FLOYD SWEITZER, by his next friend, DELLA SWEITZER, Appel-
lee, v. L. W. FISHER et al., Appellants.

MANDAMUS: When Writ Not Available—Compelling Issuance of
1, 4 Diploma—Schools and School Districts. Mandamus will not lie (a)
when no legal duty rests on the official body against which the
writ is sought, (b) when petitioner has a right of appeal, or (c)
where there is a plain, speedy and adequate remedy in the ordi-
nary course of law. *Held*, mandamus was not available to a pupil
in a public school to compel the school board to issue to him a
certificate of graduation, because (1) no statute required the issu-
ance of such diploma, and (2) the pupil had by statute a right of ·
appeal to the county superintendent.

SCHOOLS AND SCHOOL DISTRICTS: Diploma—Pupil's Right to
2 Receive—Estoppel. An estoppel *in pais* cannot establish a right
in a pupil in a public school to a diploma or certificate of gradu-
ation. The pupil's right to a diploma rests on a higher founda-
tion than the conduct of a school board. *Graduation is only
complete on the actual delivery of a certificate of graduation.*

PRINCIPLE APPLIED: A school board, not desiring to gradu-
ate plaintiff, a pupil in a public school, because of insufficient
grades, allowed him to participate to the fullest extent in public
graduating exercises, in order to avoid injuring his feelings or
the feelings of his parents. Dummy diplomas were presented to
each of the pupils, including plaintiff, because of the nonarrival
of the actual diplomas. Later, actual diplomas were delivered to
all the pupils except plaintiff. Long after the graduating exer-
cises, the board, for the first time, entered a formal record of its
refusal to graduate plaintiff. *Held*, the conduct of the board fur-
nished plaintiff no right to a diploma—that nothing short of an
actual delivery of a certificate of graduation constituted gradu-
ation.

MANDAMUS: Statute Authorizing Writ as Auxiliary Relief—Appli-
3 cation. One seeking to maintain an action wherein the granting
or refusal of an order of mandamus is the *sole* matter in issue
cannot claim any added right under section 4343, Code, 1897, pro-
viding, in effect, that one establishing a right in an action may

or may, not, at his election, have an order of mandamus to compel the performance of such established right. The circumstances and conditions contemplated by said statute are wholly lacking in the case first above supposed.

**MANDAMUS: When Writ Not Available—Compelling Issuance of Diploma—Schools and School Districts.**

**MANDAMUS: Pleading—Equitable Demurrer—Sufficiency.** A general equitable demurrer is sufficient in an action of mandamus.

*Appeal from Dallas District Court.*—HON. J. H. APPLEGATE, Judge.

WEDNESDAY, OCTOBER 20, 1915.

ACTION brought on behalf of Floyd Sweitzer, a minor, for a writ of mandamus to compel the defendants, as directors of the Independent School District of Van Meter in Dallas county, to issue and deliver to the plaintiff, Floyd Sweitzer, a diploma, of graduation certifying his graduation from said high school. The answer was a general denial, with certain special admissions. There was a decree granting the order as prayed. The defendants appeal.—*Reversed.*

*Stipp, Perry & Starzinger,* and *Burton Russell,* for appellants.

*White & Clarke,* for appellee.

DEEMER, C. J.—The petition averred, in substance, that Floyd Sweitzer was for several years a pupil in the high school of the Independent District of Van Meter, that he completed the prescribed course of study and that, on May 24, 1912, he was graduated with his class. That, notwithstanding such graduation, the defendants, as officers of the Independent District, had neglected and refused to deliver to him the usual diploma certifying to the fact of his graduation. The superintendent of the schools also is made a defendant. The defendants, by their answer, admitted that they had refused to deliver a diploma to Sweitzer and averred that this was

because they had refused to graduate him; and that his scholarship and standing as a student did not entitle him to graduation, and therefore did not entitle him to a diploma. The case is out of the ordinary, both as to the relief sought and the remedy invoked. It is unique, also, in the circumstances which appear in evidence. The parties, however, have reduced their contentions largely to a question of fact, and we shall dispose of them as such. The question of fact is: Was Sweitzer in fact graduated with his class at the regular graduating exercises of the Van Meter High School at the Methodist Church on the evening of May 24, 1912? The question is not whether his past record as a student entitled him to graduate at that time. Counsel for plaintiff concede that this latter question would involve the exercise of judgment and discretion on the part of the school officials and that such judgment and discretion could not be controlled by writ of mandamus. The only relief available to plaintiff from an adverse result in such a case would be by appeal to the county superintendent. His contention is that the discretion vested in the public officials was in fact exercised on the night of May 24th, whereby Sweitzer was graduated. Another unique feature of the case is that, although the controlling question of fact is in dispute argumentatively, there is very little conflict in the evidence.

On behalf of plaintiff, it is made to appear that the regular graduating exercises of the high school occurred at the Methodist Church on the night of May 24th, in the presence of a large congregation. There was a printed program published under the direction of the school officers. Upon this program appeared the names of the graduates, being four in number and including Sweitzer. A graduating address was delivered by a speaker from out of town. The president of the school board presided. The four purported graduates occupied the platform. The program included a formal declaration of their graduation. They were presented upon the platform to the audience as the graduates and purported diplomas were then and there presented to them as such. No

formality customary upon such an occasion was omitted at this time. The purported diplomas which were delivered in the presence of the audience were known as "dummies". It was explained to the graduates that the regular diplomas had not arrived. They were therefore delivered symbolically by the use of these "dummies". Some three months later, the regular diplomas were delivered to three of the graduates, but delivery was refused to Sweitzer. As to the foregoing facts, the evidence is undisputed.

As against this, the members of the school board testified that they did not consider Sweitzer as worthy of graduation for want of scholarship and that they had not at any time intended to graduate him and that they never voted to graduate him and that they did not, therefore, graduate him. As to any formal affirmative vote granting graduation to Sweitzer, there was none. Neither does it appear that there was such vote in favor of any other graduate. There was no formal record of any kind by the school officials naming or specifying the persons who were to be graduated. The defendants, however, testified that, on a certain evening in May prior to May 24th, four members of the board met in "Pearn's harness shop" and that, in the course of conversation between such members at such time, each member expressed himself as adverse to Sweitzer's fitness for graduation. No vote was had. No motion was presented. No record of any kind was preserved of the conversation. The conclusion thus reached was so reached solely on the recommendation of the superintendent of the schools. No member of the board pretended to have any knowledge as to the qualifications of Sweitzer except the recommendations of the superintendent. Fisher, the president of the board, testified as follows:

"The exact grades of Floyd Sweitzer were not presented to me or to any member of the board, to my knowledge, by Van Benthuysen or by anybody else, prior to the graduating exercises. That was left altogether to Van Benthuysen. I

left the matter as to who should be graduated to the representations and to the testimonial of the superintendent. In none of these cases prior to graduating exercises did I make any examination to ascertain what the class record was, and it was long after this graduation that I saw any record as to what Floyd's standing was."

The purported reason operating in the minds of the board for permitting Sweitzer to participate as a member of the graduating class was a desire to avoid hurting his feelings and especially to avoid hurting the feelings of his parents, who were highly regarded. Pearn, one of the directors, testified as follows:

"I don't know that the board was informed about Floyd Sweitzer except upon the representations made by Van Benthuysen. To my knowledge, the matter of printing Floyd's name with the graduating class was never discussed. As to putting Floyd up as one of the graduates when in fact he was not, they simply thought that it would look better and be better if they would just, with his knowledge, let him sit on the platform and go through with the class, and that no one would probably know but that it was all right. I do not know where we got that idea. It was before the graduating exercises. I think it was Van Benthuysen's suggestion. He did not make the suggestion that evening at the meeting of the board. I don't know that he ever made the suggestion before the board. He never made the suggestion to me or in my hearing. Mr. Fisher, the president of the board, told me about it. He said that he and Van Benthuysen talked the matter over and had decided that under the circumstances that was the best thing to do. He did not tell me that Floyd Sweitzer or his mother knew anything about it."

The superintendent promised some members of the board that he would explain the pretense to Sweitzer and to his parents. He never did so, however. On the contrary, he advised Sweitzer and his parents repeatedly that the boy had

made the grades and would graduate with his class. Sweitzer participated in the various preliminary preparations and bore his share of the expenses. Class pins were procured at $2.50 each. The "American Beauty Rose" was adopted as the class flower, to which Sweitzer contributed his equal dollar, at the request of the superintendent. Class orations were required to be prepared by each member. The superintendent advised Sweitzer that he need not deliver his, because it would make the program too long. The other three orations were delivered. In no other respect was there any difference in the graduating exercises or their preliminaries as between Sweitzer and the other members of the class. On February 24, 1913, a meeting was had and the following record made:

"Meeting called for the purpose of reconsidering our action on diploma for Floyd Sweitzer.

.   .   .

"Mr. Van Benthuysen being present he remarked: That Mr. Floyd Sweitzer fell short of the grades. And that Floyd Sweitzer is not competent to receive a diploma. Mr. Summers made a motion that Mr. Sweitzer had not complied to the requirements of the school and that we will not grant a certificate to Floyd Sweitzer. Mr. Starck seconded the motion and carried by vote of the board.

"Motion made that we meet the state inspector when he comes in March to see if we can get this school on an accredited list. Motion was seconded and carried."

This appears to be the only formal record that was ever made pertaining to the graduation of any member of the class.

Upon this record, the question arises as to whether an action will lie in the courts to compel the defendants to execute and deliver a certificate of graduation to the plaintiff. No other grounds for relief, independent of the ones usually relied upon for the issuance of a writ of mandamus, are shown.

1. MANDAMUS: when writ not available: compelling issuance of diploma: schools and school districts.

Mandamus will lie against a board, tribunal, corporation or person, to do an act the performance of which the law enjoins as a duty resulting from an office, trust or station. Where discretion is left to the inferior tribunal or person, mandamus can only compel it to act, but cannot control such discretion. All such actions shall be tried as equity actions. The defendants, or most of them, constitute a board, and the action is against them as members of the board or as officers of the school district, and is to compel them to do an act as such officials. The prayer is for a writ of mandamus, and there is no claim for damages or any attempt to prove any— indeed, we do not see how any could be claimed or proved. No facts entitling plaintiff to any relief in equity are shown save as they might entitle him to the relief prayed for, and no other relief could be granted except there was a prayer for it. Strip the case of all allegations needed to sustain an action of mandamus and nothing would remain. The prayer is for the writ and nothing else, and the decree cannot be broader than the prayer. It is clear, then, that this is nothing more than an action of mandamus. It has already been decided that mandamus is in no sense an equitable proceeding, but a common law remedy to compel the performance of a legal duty. *Ford v. Manchester*, 136 Iowa 213. It is true that in one case it is said that it is an equitable remedy (*Funck v. Farmers Elevator Co.*, 142 Iowa 621), and that it is governed by certain equitable principles. In the last case, it is said that an action of mandamus should be placed on the equity side of the docket. The fundamental difficulty with plaintiff's case lies in the fact that no one is able to put his finger upon a statute which compels the defendants, as a legal duty, to deliver to the plaintiff a diploma. We have looked them over with care and find no such provision anywhere in our laws. This being true, it is manifest that no action of mandamus will lie. It has been decided in numerous cases that it will not lie unless the respondent has some legal duty to perform, and we need not do more than cite, in addition to

*Ford's* case, *supra, Drew v. The School Township of Madison,* 146 Iowa 721. Nor will the action lie where there is a remedy by appeal, nor should it issue in any case where there is a plain, speedy and adequate remedy in the ordinary course of law (Code, Sec. 4344). As no legal duty to issue diplomas was ever made by any law, the remedy by mandamus will not lie.

If there was any duty to issue this diploma, or certificate, it was so that plaintiff might use it for admission, without examination, to our state or other colleges. It appears from the record that the school was not an accredited one, so that this diploma will not in any way aid the plaintiff. And were it an accredited school, and were the diploma issued by mistake, and were it ascertained that plaintiff's scholarship was not sufficient, the board, to protect its own school and to prevent unworthy and unqualified students from entering higher schools, might properly, and at any time before its issuance, refuse to issue it and, if issued, might perhaps cancel the same. Here it was never issued and, before any demand was made for it, the board, at a regular meeting, decided that plaintiff's scholarship was not sufficient to entitle him to it; so that the board has acted and denied the issuance of the diploma or certificate of graduation. There is no claim or testimony of any bad faith in the matter, and the evidence does not show that plaintiff was really entitled to it, save that the board allowed him to take part in the ceremonies incident to the closing of the school year. A diploma or certificate of

2. SCHOOLS AND SCHOOL DISTRICTS : diploma : pupil's right to receive : estoppel.
graduation by estoppel is unheard of. And surely one cannot compel the issuance of a certificate of graduation because of an estoppel *in pais*. It is practically conceded that, if the defendants had considered the matter and denied plaintiff's right to a certificate before the ceremonies attendant upon graduation, his remedy would have been by appeal to the county superintendent, and we think that must be the remedy if the refusal to issue the certificate is denied after the ceremonials. If not,

then the right to the certificate must arise out of an estoppel *in pais*. The issue here is not as to the right or wrong of the matter of permitting plaintiff to take part in the public performance attendant upon graduation. If that were the issue, then he might be entitled to a certificate even through accident or mistake. Mere permission to one to take part in the ceremonials, with the understanding that it was to save him and his family from humiliation, does not, to our mind, entitle him to a certificate of graduation.

A graduate is one who has honorably passed through the prescribed course of study and received a certificate to that effect. *Leopold v. United States*, 18 Ct. of Claims 546; *People v. Eichelroth*, (Cal.) 20 Pac. 364 (2 L. R. A. 770); Webster's Dictionary. And it is the certificate which attests the fact, not of his taking part in a public performance, but that he has passed the prescribed course of study and is otherwise qualified according to the rules of the school. If the board, with knowledge that one has not passed the prescribed course, should, out of favoritism, grant him a certificate, it might, no doubt, be cancelled through some remedy; and if issued through mistake, it might, no doubt, be cancelled. Plaintiff could have been graduated without taking part in any ceremonies, but he could not be a graduate, no matter what the ceremonies, unless he passed his examinations and received his diploma.

What we would emphasize here is the fact that the public performance or ceremonial is not a graduation except that a certificate be granted. That is the one act in the ceremony which has any legal effect. That is the final and culminating act of graduation; and without the certificate, no one would be entitled to be called a graduate, no matter how pleasing his oration or how beautiful her song. There may be a symbolic delivery of a diploma, but it is not effective until followed by an actual one; for the "dummy" is not and

cannot be effective as a certificate unless followed by a genuine one.

In our opinion, plaintiff is not a graduate; and in no event, under this record, is he entitled to an order on defendants to issue him a genuine certificate, although he became by license the possessor of a "dummy". A man cannot be entitled to practice law simply because he has undertaken to practice as such, even though he in some way becomes possessed of a dummy certificate of admission to the bar; nor is he entitled to the degree of Bachelor of Laws because he writes a good thesis and stands in line when the oath is administered by someone authorized to administer it. Plaintiff is not entitled to any relief, save, possibly, by appeal to the county superintendent, where the question of his grades and his right to a diploma as part of the practices of our schools may be investigated; and it is very clear that he has no cause of action under Sec. 4343 of the Code, which section reads as follows:

"The plaintiff in any action, except those brought for the recovery of specific real or personal property, may also, as an auxiliary relief, have an order of mandamus to compel the performance of a duty established in such 3. MANDAMUS: statute author- action. But if such duty, the performance izing writ as auxiliary re- of which is sought to be compelled, is not one lief: applica- tion. resulting from an office, trust or station, it must be one for the breach of which a legal right to damages is already complete at the commencement of the action, and must also be a duty of which a court of equity would enforce the performance."

This contemplates the issuance of an order of mandamus as auxiliary relief to a main action. If all that plaintiff shows is a right to mandamus, the relief is not auxiliary, but principal. If, then, he has a main cause of action and his only one is for mandamus, Sec. 4343 does not apply. The

test is to strip from the petition all allegations necessary to obtain a writ of mandamus and see if any other cause of action remains. There were no allegations showing

**4. MANDAMUS: when writ not available: compelling issuance of diploma: schools and school districts.** any right to damages against the defendants, either as officers or individuals, and there was no prayer for the same, and there was no independent action in equity stated in the petition and no prayer except for mandamus. Mandamus will not lie, because there was no duty enjoined upon defendants to issue diplomas, or certificates, and there was no other independent action stated which would lie, to which mandamus might be auxiliary. To hold that an action in equity will lie to enforce the performance of some claimed right, where no allegations are made which would justify the issuance of a writ of mandamus, and then claim that plaintiff is in equity entitled to such a writ is merely to enlarge the statute beyond its true import. This section is found in the chapter on mandamus and must be construed with reference thereto. To permit such an action as plaintiff here presents would be like allowing one who merely states grounds for an attachment, without any other cause of action being stated, to recover judgment and sequester property. An auxiliary proceeding necessarily presupposes some other independent and distinct right in the plaintiff which he might enforce by mandamus or not, at his election. Here, if he elected not to have an order of mandamus, he would not be entitled to any remedy either in law or in equity. If plaintiff has been wrongfully deprived of any right at all, his only remedy was by appeal to the county superintendent. *School Corporation v. Independent District*, 162 Iowa 257; *Preston v. Board*, 124 Iowa 355; *Kinney v. Howard*, 133 Iowa 94; *Marshall v. Sloan*, 35 Iowa 445; *Kirkpatrick v. Independent District*, 53 Iowa 585.

As the case is to be tried in equity, and must be put on the equity docket, and is tried as an equitable action, the

defendants were not required to do more than file a general
demurrer, without stating the specific grounds
thereof, in order to raise the question as to
plaintiff's right to recover on any theory.
Code, Secs. 3561, 3562; *Hanna v. Hawes,* 45
Iowa 437; *Hintrager v. Sumbargo,* 54 Iowa 604; *Mengel v.
Mengel,* 145 Iowa 737. Every question now considered was
properly raised by the demurrer, and it need not appear what
argument or claim was made in the court below.

5. MANDAMUS:
pleading:
equitable de-
murrer: suffi-
ciency.

Every law issue was tendered by the demurrer, and
should be considered here. The demurrer should have been
sustained, and the trial court was in error in granting the
relief prayed. The decree must therefore be and it is—
*Reversed.*

LADD, GAYNOR, PRESTON and SALINGER, JJ., concur.