BETH VALENTINE, Appellant, v. INDEPENDENT SCHOOL
DISTRICT OF CASEY et al., Appellees.

SCHOOLS AND SCHOOL DISTRICTS: Pupils, Grades, and Gradua-
1   tion—Diploma. The public ceremonial of graduating exercises
is not a graduation. It is not the ceremonial, but it is the
completion of the prescribed course, which entitles one to a
diploma, which is simply an evidence that the course has been
completed, and so evidenced by the graduation.

SCHOOLS AND SCHOOL DISTRICTS: Pupils, Grades, and Gradua-
2   tion—Diploma—Duty of Officers to Issue. Even without a stat-
ute requiring the issuance of a diploma, there is imposed a legal
duty on the officers of a public high school to issue written evi-
dence of a pupil's graduation, in the form of a certificate, a
diploma, or the like, to those, who have satisfactorily com-
pleted the prescribed course of study, unless for sufficient rea-
sons they are justified in not doing so.

MANDAMUS:    Subjects and Purposes—Compelling Issuance of
3   Diploma. School officials were not justified in refusing a high
school pupil a diploma, merely because she refused to wear a
cap and gown at the graduation exercises, on the ground that
they were nauseating from fumigating, and also might carry
disease. *Held* that she was entitled to mandamus to compel
the authorities to issue the diploma.

MANDAMUS:    Subjects and Purposes—Records of Pupil's Grades.
4   The records of a pupil's grades during her course are the prop-
erty of the school district, and not of the principal and super-
intendent of schools, and upon her graduation, she is entitled
to a copy of the same. *Held* that she was entitled to manda-
mus to compel the school authorities to deliver the same to her.

SCHOOLS AND SCHOOL DISTRICTS:    Government—Officers' Il-
5   legal Actions—Remedies. One complaining of a rule of public
school authorities is not limited to an appeal to the county
superintendent of schools, under Sec. 2818, Code, 1897, if the
rule is unreasonable, and not within the scope of the power
conferred upon the school authorities.

*Appeal from Guthrie District Court.—J. H. APPLEGATE,*
Judge.

OCTOBER 23, 1919.

ACTION for a writ of mandamus to require defendants to issue a diploma to plaintiff; also, a copy of plaintiff's grades made by her in defendants' high school course of four years. Defendants demurred to the petition, which demurrer was sustained, and the plaintiff appeals.—*Reversed.*

*C. E. Berry* and *Carl P. Knox,* for appellant.

*A. M. Fagan,* for appellees.

PRESTON, J.—1. It is alleged by plaintiff, and admitted by the demurrer, that plaintiff attended defendants' high school for a term of four years, complying with all of the rules and regulations of the defendant school board, and made grades in all studies pursued in said four years' course above the passing grade, or 75 per cent; that plaintiff fully completed all of said high school course, and delivered her graduating oration, as required by the rules of defendant corporation; that defendants issued diplomas to all of the class, including this plaintiff, and advertised that commencement exercises would be held at the high school auditorium on May 30, 1918, at 8 o'clock P. M.; that defendants procured caps and gowns, prior to the commencement exercises, and had same fumigated by the board of health physician at Casey, Iowa, and demanded that the graduates wear said caps and gowns during the exercises; and that the said health physician advised this plaintiff that the danger of taking contagious disease from said caps and gowns was not eliminated by said fumigation; that plaintiff was unable to wear her cap and gown, for the reason that the odor and smell from the effects of the disinfectants made her sick, and for the further reason that the likelihood of catching contagious diseases had not been eliminated by the disinfectant; and that this plaintiff

informed the defendants, as did also the other graduates, what the health physician had advised her as to catching contagious disease from wearing said caps and gowns, and that the smell of said disinfectant was unbearable; but that, regardless of these facts, defendants insisted that plaintiff and the other graduates should wear their caps and gowns; that the fumes and odor from the clothing were so strong that none of the graduates wore their caps, and but three of said graduates wore the gowns, and the three wearing the said gowns received their graduating certificate or diploma; that defendants refused to deliver to plaintiff her graduating certificate, or diploma, on account of her failing to wear said cap and gown; that there had been no rule or order requiring the plaintiff to wear a cap and gown at the graduating exercises, and, had there been, it would have been illegal and void, as said defendants had no legal right to make such requirements; that the defendant the Independent School District of Casey, Iowa, is an accredited high school, and is recognized as such by all of the state colleges and higher institutions of learning in the state of Iowa; that, in view of this fact, plaintiff is entitled to her grades in said school, so that she may take the examination for a teacher's certificate, or enter any of the colleges or higher institutions of learning in the state of Iowa, as she is entitled to do, were she granted her grades in said high school; that she made a request and demand upon the defendants, and especially upon J. E. Roherbaugh, superintendent of said school, and that he refused to deliver to plaintiff her grades, or copies thereof, claiming that the said grades were his private property, and that neither plaintiff nor anyone for her could have said grades, or access to same; that plaintiff has no speedy and adequate remedy at law, and she asks that a writ of mandamus issue, compelling defendants to deliver to her her certificate of graduation, or diploma, and a true state-

ment and certificate of her grades in said high school studies during her four-year course in said high school.

Defendants demurred to said petition, on the grounds that plaintiff had a plain, speedy, and adequate remedy at law by appeal to the county superintendent; that the ac-- tion of the board of directors in issuing certificates of grad- uation or diplomas and grade reports, and all of the mat- ters complained of by said plaintiff, are matters discre- tionary with said board, and not legal obligations imposed upon them as such school officials.

The parties to this action seem not to be familiar with the Golden Rule, or have forgotten it. On the one side, they seem to have been impressed with the idea that they were "drest in a little brief authority;" and on the other, there appears to have been present the idea of resistance to au- thority, so prevalent all over the world at this time. A little common sense would, it seems to us, have avoided this litigation. It may be that it would have been reasonable and proper for the school au- thorities to have required the graduating class to wear caps and gowns. There might be advantages in this. Some might be inclined to dress better than the others were able to do; and there might be other reasons. And it may be that the school authorities could properly have refused to permit any of the class who refused, without sufficient rea- sons, to comply with the requirement, to take part in the honors of the public graduating exercises. Possibly, if the danger from disease from the use of the caps and gowns was real, this would be an excuse. It appears that none of the graduates wore their caps, and but three wore the gowns, and that such three received their diplomas. It is not shown that plaintiff was willing to do this much. But the graduating exercises are now past, and the mat- ters just referred to are, for that reason, now out of the

1. SCHOOLS AND SCHOOL DIS- TRICTS: pupils, grades, and graduation: diploma.

case, and are not determined. The public ceremonial is not a graduation, and is not what entitles a student to a certificate or diploma; but it is the completion of the prescribed course which entitles one to a diploma. The diploma is simply the evidence that this has been done, and evidence of graduation. Without the diploma, no one would be entitled to be called a graduate; and, though one had completed the course, and passed examinations, he would not be permitted to enter college.

We shall proceed now to determine whether plaintiff was entitled to a writ of mandamus in regard to her certificate or diploma and her grades. The order was much broader and more far reaching than merely to deprive plaintiff of the right to participate in the graduating exercises. It appears to have been a mere verbal order,— at least, it does not appear that there was any order or rule regularly adopted of record, or that there was then any penalty prescribed; so that, so far as the record shows, plaintiff did not and could not know the consequences to follow a failure to comply. Even had there been such a regular order or rule, it would have been arbitrary and unreasonable. The trial court, from statements in its written opinion, was reluctant to deny the writ, and stated that he followed the case of *Sweitzer v. Fisher*, 172 Iowa 266. We are satisfied that, under the facts in that case, the right conclusion was reached, and the cases are readily distinguished. In that case, the student had not passed his grades, and was, therefore, not entitled to be graduated. There was some circumlocution there in the use of dummy diplomas, and afterwards other diplomas were issued. But in the instant case, plaintiff had complied with all rules and regulations, and completed the full four years' course, and passed all examinations required. The only reason for the attempt to deprive her,

2. SCHOOLS AND SCHOOL DISTRICTS: pupils, grades, and graduation: diploma: duty of officers to issue.

in a considerable measure, of the benefit of her four years' study, was her failure, under the circumstances given, to wear the cap and gown. This deman'd was subsequent to her having completed the four years' course, passed the examinations, and complied with all rules, except the one stated. The penalty is harsh and unreasonable, and the action of the defendants arbitrary.

Appellant's propositions for reversal, stated briefly as may be, are that plaintiff was induced to complete the four years' course, and that she met all her requirements; that, by the action of the board, she is disqualified to enter the colleges of the state, and, because of a subsequent demand upon her, is refused a diploma; that, the board having extended certain offers to any pupils wishing to avail themselves thereof, she is entitled, by entering the high school and completing the course, to the evidence which will show such facts. She claims, also, that an appeal to the higher school authorities is not an exclusive remedy, but that the courts will determine whether or not the defendants have acted within the scope of their powers; that plaintiff has vested rights, and is deprived of substantial rights which the board cannot, by subsequent rule, rescind; that, in an equitable action, such as this, the court may take equitable causes into consideration in determining whether relief shall be granted; that the board can exercise such powers as are conferred by statute, either expressly or by reasonable implication. One or two other points are made, which will be referred to later in the opinion. In support of the foregoing propositions, appellant cites *Benjamin v. District Twp.,* 50 Iowa 648; *Hibbs v. Board of Directors,* 110 Iowa 306; *Funck v. Farmers Elevator Co.,* 142 Iowa 621; Code Section 4343; *District Twp. of Wash. v. Thomas,* 59 Iowa 50.

The question of the right to a mandamus to compel the issuance of a diploma is one on which there is very little

authority. We find, in the case of *State ex rel. Burg v.*
*Milwaukee Medical College*, 128 Wis. 7 (106 N. W. 116, 3
L. R. A. [N. S.] 1115), that the Supreme Court of Wis-
consin held that mandamus will not lie to compel a private
medical college to comply with its contract to furnish a
diploma to a student who has completed his course, since
there is an adequate remedy by action for breach of the
contract, or suit for specific performance. In the course of
the discussion in the opinion, it was said that mandamus is
granted usually for public purposes, to compel the perform-
ance of a public duty prescribed by statute, and to compel,
in proper cases, the performance of specific duties imposed
by law, but that the duties arising out of contract relations
will not be enforced by mandamus. It does not appear in
the instant case what rules, if any, are provided by defend-
ants, in regard to issuing diplomas to those who may com-
plete the course. True, there is no statute expressly re-
quiring the issuance of a diploma in such a case, but our
schools are maintained by taxation, and our public schools
are, in a sense, public, and those who are in authority, and
who are responsible for the government of the schools, are,
in a sense, engaged in a public duty. And we think and
hold that, even without a statute, there is an implied legal
duty on the part of such officers to issue written evidence
of graduation, in the form of a certificate, a diploma, or the
like, to those who have satisfactorily completed the pre-
scribed course of study, unless for sufficient reasons they
are justified in withholding it. Defendants have adopted
the method of issuing diplomas; and they
may not discriminate against the plaintiff.
On the other hand, in L. R. A. 1916B, 616,
where the *Sweitzer* case is annotated, we
find several cases on the subject. In *Peo-*
*ple ex rel. Jones v. New York Homeopathic Medical College*
*& Hospital*, 20 N. Y. Supp. 379, the rule governing the right

3. MANDAMUS:
subjects and
purposes:
compelling is-
suance of
diploma.

to compel the issuance of diplomas by mandamus is given thus:

"Stated in general terms, the principle is that mandamus will lie to compel the performance of duties purely ministerial in their nature, and so clear and specific that no element of discretion is left in their performance; but as to all acts or duties necessarily calling for the exercise of judgment and discretion on the part of the officer or body at whose hands their performance is required, mandamus will not lie.".

Referring to that case in the note, it is said that, where a college neither expressly nor impliedly agreed to issue a diploma to its students unless the latter had satisfactorily passed certain examinations, and their qualifications had been approved by the faculty, a student against whose qualifications the faculty had found, was held not entitled to a writ of mandamus to compel the college to issue a diploma to him, although he charged bad faith and ill will upon the part of some of the officials of the college. In *People ex rel. O'Sullivan v. New York Law School*, 68 Hun 118 (22 N. Y. Supp. 663), it was held that the faculty of institutions having power to recommend to the regents, students deemed to be worthy of degrees, are necessarily vested with broad discretion as to the persons who shall receive those honors, and that, where the evidence showed that the conduct of a student at a law school had been such, between his final examinations and the time of conferring degrees, that there was a fair occasion for the exercise of discretion on the part of the faculty, and it had refused him his degree, the court would not grant a peremptory writ of mandamus to compel the law school and dean to grant him a diploma. In the instant case, outside of the question of wearing cap and gown at the graduation ceremonies, there was no fair occasion for the exercise of judgment or discretion on the part of defendants. Every oth-

er question had already been determined in favor of plaintiff. In *State ex rel. Nelson v. Lincoln Medical College,* 81 Neb. 533 (17 L. R. A. [N. S.] 930), where the dean of a medical college, in pursuance of his authority under the by-laws of the corporation (not under a statute), in passing upon the standing of students applying for graduation, reported to the directors that a student had fulfilled all demands of the institution, and had passed all examinations, so as to entitle her to a diploma, and the board of directors arbitrarily and capriciously refused to graduate the student and issue her a diploma, it was held to be the duty of the court to issue a writ of mandamus to compel the college corporation and its directors to discharge their duty. In that case, the by-laws of the college did not, as we understand it, provide for the issuance of diplomas upon graduation, but the board of the college, under the statutes of Nebraska, had power to confer, on the recommendation of the faculty, all such degrees and honors as are conferred by colleges and universities of the United States, and such others, having reference to the course of study and the accomplishment of the student, as they might deem proper. So that it would seem that, in that case, there was no express requirement by the statutes or by the rules or by-laws of the college to issue a diploma. They had power to do so. It is not questioned in the instant case, and cannot be, we think, but that defendants had the power and authority to issue diplomas. Appellant argues that they have such power, and cites *District Twp. of Wash. v. Thomas,* supra, to the proposition that the board can exercise such powers as are conferred by statute, either expressly or by reasonable implication. In *Hamlett v. Reid,* 165 Ky. 613 (177 S. W. 440), the superintendent of public instruction, was, by statute, made ex-officio chairman of the board of trustees of the State Normal Industrial Institute. Plaintiff was awarded a diploma by the trustees, and it was sign-

ed by all of them except the state superintendent. He refused to sign, although plaintiff had complied with all requirements. It was admitted that, although the diploma was signed by the chairman pro tem of the board, and was valid without the signature of the state superintendent, yet the state authorities had refused to recognize it as valid, without the signature of the state superintendent. It was held that the law would not permit the purposes for which the school was created to be thwarted by arbitrary action on the part of any member of the board, and the fact that the diploma was, in fact, valid would not justify the superintendent in arbitrarily refusing to sign it, and that mandamus would lie, directing him to do so. It was held in that case that the answer of defendant did not give a sufficient reason for a refusal. We take it that, though there may appear to be, to defendants, some reason for withholding the diploma, yet it must be a sufficient reason. In other words, they may not refuse arbitrarily, under a rule or order which is itself unreasonable and arbitrary. The court further said that the fact that it was not necessary for the state superintendent to sign appellee's certificate, in order to give it validity, does not excuse him; that county boards know that the state superintendent is chairman of the board; but they do not know, from the diploma, whether a chairman pro tem has been selected, or is authorized so to act. His refusal to sign it, therefore, deprives her of a certificate in regular form, and clouds her right to teach. And so, it is in the instant case, except that here the facts are even stronger in plaintiff's favor, because she has no evidence whatever to present to any college which she may wish to enter. Plaintiff is deprived of certain rights and privileges to which she would be entitled as a graduate of an accredited high school. She has completed the prescribed course, and is deprived of the certificate or diploma, for reasons which, as we have before indicated, are insufficient.

A somewhat similar question was involved in *Northington v. Sublette,* 114 Ky. 75 (69 S. W. 1076), where a mandamus was issued to compel a county superintendent, as a member of the board of examiners, to issue a teacher's certificate. The petitioner having passed the requisite examination and complied with all demands, the court held that the board, without special cause, had no right to withhold it. The court said:

"The majority of the board of examiners were, therefore, to determine the grade of any person examined by them, and the decision of the majority was as binding as if it had been made by the whole board. When this decision was rendered, appellant became entitled to her certificate, and it was the duty of the superintendent to sign it, and deliver it to her. In this, she had no discretion. It was simply a ministerial duty."

2. It is further contended by appellant that, under Section 2776 of the Code, the defendant district, through its board, is authorized and empowered to establish graded schools or high schools and determine the course of study, subject to the approval of the state superintendent; and that, this being so, it follows that, in order to have graded schools, a record should be kept by the teachers of each pupil of the grade made in each study; and that, therefore, the grades or records thereof should be the property of the school district, and not the private property of the teachers, or superintendent of the schools. We think there is force in appellant's contention at this point. The markings or records of the different pupils, kept by the teachers, should·be.and are, in a sense, public records, and not the private property of the teachers or of the school. The school is a public school. It is necessary that the records of the different pupils should be kept, for the information of other teachers and the school officers,

4. MANDAMUS: subjects and purposes: records of pupil's grades.

to know what a pupil's record in the different studies is and has been. Unless this is so, how could it be determined whether a class or pupil should be advanced, in case of the resignation or death of a teacher? The case being presented on demurrer, the record is indefinite and uncertain as to the method pursued by the defendant school in keeping plaintiff's grades, referred to in the petition. There is nothing in the record tending to show that the record of the standing of the different pupils is the private property of the school teachers. No cases are cited by either side on this proposition. Under the statute before cited, the board had power to establish graded schools or schools of a higher order; and we have given some of the reasons why it would appear to be necessary to keep the markings or gradings of different pupils, in order to determine the grades. It would seem, then, that such records are public records, within the meaning of the law; and if this is so, certified copies thereof could be used, under the first part of Section 4635 of the Code. Of this section, we said, in *Austin v. Whitcher*, 135 Iowa 733, at 737, that it simply announces a rule which is generally recognized by all courts. As bearing upon this question, see *Thurstin v. Luce*, 61 Mich. 292 (28 N. W. 103). The school rolls were admitted in evidence, to show the presence of a pupil in school when he claimed to have been elsewhere at such times, and the court said that such evidence was entitled to great weight. The precise question now under consideration was not directly determined. In *Sanborn v. School District*, 12 Minn. 17, the records of a school district were admitted in evidence, but the only question there was as to whether a proper foundation had been made. In Jones on Evidence (2d Ed.), Section 508, the rule is stated as to the admissibility in evidence of books of public officers, and the class of books is referred to, some of which are books required to be kept by law, and others as to which there seems to be no such requirement. See, also,

Section 514 of the same work. See, also, the later work by Mr. Jones, "The Blue Book of Evidence," the same section, where it is said, at Section 508:

"The cases are numerous that the entries are competent evidence, where the nature of the office seems to require them, and whether the duty to make them is enjoined by statute or by a superior officer in the performance of official duty. So long as the one making them was in discharge of a public and official duty in so keeping the book of entry, it is sufficient. Such entries are generally made by those who can have *no motive* to suppress the truth, or to *fabricate* testimony. * * * Nor need it be kept by the public officer himself, if the entries are made under his direction, by a person authorized by him."

Of course, to be admissible, it will be necessary that such records should be authenticated, and the proper foundation laid.

3. It is contended by appellees that, under Section 4341, Code Supp., 1913, where discretion is left to the inferior tribunal, mandamus can only compel it to act, but cannot control such discretion, and they cite, further, *Preston v. Board of Education,* 124 Iowa 355, and other cases, to the point that, where the duty imposed upon the board or tribunal involves an exercise of discretion, based upon facts to be found by it, mandamus will not lie, however erroneous the conclusion reached. But we have seen, by the discussion in the first paragraph of this opinion, that there was no question of discretion left.

5. SCHOOLS AND SCHOOL DISTRICTS: government: officers' illegal actions: remedies.

It is further contended by appellees, and this is their principal argument, that plaintiff's remedy was by appeal to the county superintendent, under Code Section 2818, and they say that the matters complained of by the appellant are matters purely of school discipline and government. They cite Section 2782-c, Code Supp., 1913, as to the pow-

er of the directors to suspend or dismiss pupils, or to pre-
vent them from graduating, or participating in school hon-
ors, for a violation of the rules or regulations adopted by
the board. This, of course, relates to reasonable rules.
Possibly we should have taken up this question first.
Doubtless, plaintiff could have appealed to the county su-
perintendent, and then, if necessary, to the state superin-
tendent, and, if the action of the board had been reversed, a
mandamus would issue, to compel the board to carry out
such order. For myself, I am not so sure but that this
course should have been taken. And yet, the holdings are
that the courts may determine whether or not school boards
have acted within the scope of their powers. The rule is,
briefly stated, that a party complaining of a rule is not
limited to an appeal to the county superintendent, if the
rule is unreasonable, and not within the scope of the pow-
ers conferred upon the board. *Perkins v. Board of Direc-
tors,* 56 Iowa 476; *Hinkle v. Saddler,* 97 Iowa 526; *Rodg-
ers v. Independent School Dist.,* 100 Iowa 317; *Kinzer v.
Directors,* 129 Iowa 441. In *Burkhead v. Independent
School Dist.,* 107 Iowa 29, 31, it was held that the remedy
is not by appeal to the county superintendent, where the ac-
tion of the board of directors is wrongful, and under the
circumstances of that case, the plaintiff was permitted to
sue in the courts, to recover under a teacher's contract.
See, also, *Knowlton v. Baumhover,* 182 Iowa 691, 726, and
cases cited. In the *Knowlton* case, at page 726, it was said:

"The rule is thoroughly well settled that, while the dis-
cretion granted by statute to the board of directors can be
reviewed only by appeal to the county superintendent, yet,
where it 'acts without jurisdiction, or has exceeded its pow-
ers, and by some act in an official capacity has done, or
attempted to do, that which 'it has not a right to do, the
courts have jurisdiction to set aside the unauthorized act.' "

As before stated, we are of opinion that the order of

the board was unreasonable and arbitrary, and, therefore, such a rule as the board had not a right to make, and that the board exceeded its powers. We are of opinion that the trial court erred in denying the writ. The judgment is— *Reversed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.